UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

LU NAN FAN,

                              Plaintiff,                    REPORT AND
                                                           RECOMMENDATION

            -against-                                      17-CV-6963 (WFK)

JENNY & RICHARD'S INC.,
*doing business as* KING WOK,
SHIRLEY'S PLACE, INC.,
*doing business as* KING WOK,
ZUO YAO GAO,
and "JOHN" LIU,

                              Defendants.
------------------------------------------------------------------x

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

        In this wage-and-hour action, plaintiff Lu Nan Fan ("Fan" or "plaintiff") sues his

former employers, defendants Jenny & Richard's Inc. ("Jenny & Richard's"), doing business

as King Wok; Shirley's Place, Inc. ("Shirley's Place"), also doing business as King Wok; Zuo

Yao Gao ("Gao"), and "John" Liu ("Liu") (collectively, "defendants"), to recover for

deficiencies in the wages he was paid and related damages.   See generally Complaint (Nov.

29, 2017) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.   Currently

pending before this Court, on a referral from the Honorable William F. Kuntz II, is plaintiff's

motion for default judgment.   See Motion for Default Judgment (Aug. 21, 2018) ("Pl. Mot."),

DE #21; Order Referring Motion (Aug. 23, 2018), DE #25.

        For the reasons that follow, this Court recommends that the District Court (1) *sua*

*sponte* dismiss the claims against defendant Gao, on account of ineffective service of process;

(2) grant a default judgment against defendant Jenny & Richard's in the amount of $12,000.08,

consisting of $2,047.75 in unpaid minimum and overtime wages, $218.75 in spread-of-hours compensation, $2,266.50 in liquidated damages, $128.58 for tools of the trade, $6,200 in statutory damages, $1,046.50 in attorney's fees, and $92 in costs; and (3) grant default judgment against defendants Liu and Shirley's Place, jointly and severally, in the amount of $40,326.92, representing $11,469.75 in unpaid minimum and overtime wages, $1,374.75 in spread-of-hours compensation, $12,844.50 in liquidated damages, $771.42 for tools of the trade, $10,000 in statutory damages, $3,503.50 in attorney's fees, and $363 in costs.

## BACKGROUND[1]

On November 29, 2017, plaintiff filed his Complaint, seeking damages from defendants, see Compl. ¶¶ 3, 4, for their failure to pay minimum and overtime wages pursuant the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law § 650 et seq. ("NYLL"); violations of New York's spread-of-hours provision, see N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6; failure to reimburse expenses relating to tools of the trade pursuant to 29 C.F.R. § 531.35; and failure to provide wage notices and statements under the NYLL's Wage Theft Prevention Act ("WTPA"), see N.Y. Lab. Law §§ 195(1)(a), 195(3).

On December 4, 2017, plaintiff served the two individual defendants by leaving copies of the summons and Complaint with a cashier, "Nancy Nee," at King Wok's principal place of business (225-21 Merrick Boulevard, Laurelton, New York 11413), and by mailing the

---

[1] The facts referenced herein are primarily derived from plaintiff's Complaint, which, by defaulting, defendants have not controverted.

documents to Gao and Liu at that address the following day.  See Affidavits of Service

("12/4/17 Affs. of Service"), DE #7.  On February 28, 2018, plaintiff re-served Gao and Liu

at the same King Wok location, leaving copies of the summons and Complaint with Kim "W,"

a purported "co-worker," and mailing copies to the same address.  See Affidavits of Service

("2/28/18 Affs. of Service"), DE #14, #15.  Meanwhile, also on December 4, 2017, plaintiff

served the two corporate defendants through the New York Secretary of State.  See Affidavit

of Service (Dec. 4, 2017) ("12/4/17 Corp. Aff. of Service"), DE #10-5.

     Following defendants' failure to timely respond to the Complaint, plaintiff requested

that certificates of default be entered against all four defendants, see Request for Certificate of

Default (Jan. 30, 2018), DE #10; Request for Certificate of Default (Apr. 26, 2018), DE #16,

and the Clerk of the Court entered notations of default, see Clerk's Entry of Default (Feb. 7,

2018); see also Clerk's Entry of Default (May 2, 2018), DE #17.  Plaintiff moved for default

judgment on August 21, 2018.  See Pl. Mot.

     The Complaint alleges that plaintiff worked for Jenny & Richard's and Shirley's Place,

both doing business as King Wok, a Chinese restaurant located at 225-21 Merrick Boulevard in

Laurelton.  See Compl. ¶¶ 7, 8, 10.[2]  The corporate defendants are alleged to be "co-owned

by the same owners[,]" id. ¶ 16, and to do business "as King Wok as joint employers

concurrently," id. ¶ 15.  Defendant Gao is alleged to be the owner of Jenny & Richard's,

while defendant Liu is the owner of Shirley's Place.  See id. ¶¶ 17, 18, 20, 21.

---

[2] Plaintiff's Complaint contains two sets of paragraphs numbered 1 through 44.  Compare
Compl. pp. 1-8 with Compl. pp. 13-19.  For clarity, the Court's citations to the second set of
paragraphs 1-44 add an asterisk following the numerals.

Plaintiff was a delivery worker for King Wok during the following periods: (1) August 25, 2015 to December 15, 2015; and (2) February 10, 2016 to June 22, 2016.  See id. ¶¶ 7, 29-33.  From August 25 until October 3, 2015, plaintiff worked five days per week, from 11:00 a.m. until 2:00 a.m. of the next day, with no break, for a total of fifteen hours per day.  During this period, plaintiff was paid $80 in cash for each day regardless of the actual number of hours worked.  See id. ¶¶ 29, 34.  From October 4 through December 15, 2015, plaintiff worked five days per week.  On Mondays, Thursdays, Fridays and Saturdays, plaintiff worked from 11:00 a.m. to 2:00 a.m. of the next day.  On Sundays he worked from 5:00 p.m. to 2:00 a.m. of the next day.  See id. ¶ 30.  For this period, plaintiff was paid $80 in cash per day regardless of the number of hours worked.  See id. ¶ 35.

Plaintiff next worked for defendants in 2016, from February 10 until March 31, four days per week, from 11:00 a.m. until 2:00 a.m. the next day.  He was paid $100 in cash for each day he worked during this period.  See id. ¶¶ 31, 36.  From April 1 until May 31, 2016, plaintiff worked seven days per week, from 11:00 a.m. until 2:00 a.m. the next day, and was paid $100 in cash per day regardless of the number of hours worked.  See id. ¶¶ 32, 36.  Finally, plaintiff worked from June 1 until June 22, 2016, six days per week, from 11:00 a.m. until 2:00 a.m. the next day and was paid $100 in cash per day regardless of actual hours worked.  See id. ¶¶ 33, 36.

Plaintiff claims that he is owed minimum and overtime wages under both the FLSA and NYLL, see id. ¶¶ 38, 1*-24*; see also Memorandum of Law in Support of Plaintiff's Motion

4

for a Default Judgment Against Defendants[3] (Aug. 21, 2018) ("Pl. Mem.") at 8-9, DE #22,

and that defendants violated the FLSA by not reimbursing him for $900 in costs associated

with tools of the trade, see Compl. ¶¶ 37*-40*; see also Pl. Mem. at 8-9.   Plaintiff also

alleges that defendants failed to pay him under New York's spread-of-hours provision, and

failed to provide him with any wage notices or statements, in violation of the NYLL's WTPA.

See Compl. ¶¶ 25*-36*; Pl. Mem. at 9-10.

Following Judge Kuntz's referral of the motion for default judgment to the undersigned

magistrate judge, this Court gave defendants until September 18, 2018 to respond to plaintiff's

request for damages, and scheduled an evidentiary inquest hearing.   See Scheduling Order

(Sept. 5, 2018), DE #26.   At the hearing, plaintiff, through an interpreter, offered credible

testimony and delivery receipts to substantiate the hours he worked.   See Minute Entry (Sept.

24, 2018), DE #28; see also Transcript of Proceeding (Oct. 1, 2018) ("Tr."), DE #29.

Nevertheless, contrary to his pleading's conclusory assertion of concurrent co-ownership of the

business by all four defendants, see, e.g., Compl. ¶¶ 15-16, plaintiff acknowledged that about

one month after he commenced his employment at King Wok, his original supervisor, "Mr.

Gao," sold the restaurant to "Mr. Liu," who then replaced him as plaintiff's "boss[,]" see Tr.

---

[3] The full title of plaintiff's memorandum of law is: Memorandum of Law in Support of
Plaintiff's Motion for a Default Judgment Against Defendants *Wendo Furniture NY Inc., Wanyi
Chen, and "John" Hu (First Name Unknown)*, DE #22 (emphasis added).   The Court, after
reviewing the substance of plaintiff's memorandum, concludes that the title is a typographical
error—one of a series of errors in plaintiff's submissions.   For example, the third line of the
Complaint refers to that pleading as the "Amended Complaint," even though it is the initial
pleading, see Compl. at p. 1; (the first) paragraph 11 refers to the name of the restaurant as
"Abumi Sushi," id. ¶ 11; and (the first) paragraph 57 references defendants' "three restaurant
locations," id. ¶ 57; see also *infra* p. 20 n.13.

13:15-14:22.

Defendants did not appear at the September 24th proceeding, nor did they respond to this Court's September 5th Scheduling Order or otherwise appear in this action.

## DISCUSSION

### I.    Default Judgment Standard

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.   See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b).   A defendant's default ordinarily constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages.   See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).   This principle is, however, subject to several exceptions and limitations.   First, "a fact is not well-pleaded if it is inconsistent with other allegations of the complaint[,] or is contrary to uncontroverted material in the file of the case."   Chuchuca v. Creative Customs Cabinets Inc., No. 13-CV-2506 (RLM), 2014 WL 6674583, at *5 (E.D.N.Y. Nov. 25, 2014) (citations and quotations omitted).   Additionally, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief.   See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine

6

& Kebartas, Inc., No. 10-CV-2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15,

2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is

"required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a

matter of law").

Finally, the damages amount pleaded by a plaintiff is not deemed to be established by

the default; the Court must conduct "an inquiry in order to ascertain the amount of damages

with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151,

155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,

109 F.3d 105, 111 (2d Cir. 1997)). This inquiry may be accomplished by evaluating and

analyzing affidavits and other documentary evidence submitted by the plaintiff in regards to the

extent of damages sought. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir.

2015); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). It is within

a court's discretion to determine whether the plaintiff's burden has been met, and whether or

not to hold an evidentiary hearing. See Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504,

508 (2d Cir. 1991). The moving party is entitled to all reasonable inferences from the

evidence it offers. See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

## II. Service of the Complaint

### A. Service on the Individual Defendants

Rule 4 of the Federal Rules of Civil Procedure ("FRCP") permits service of process on

an individual in accordance with the law of the forum state—here, New York. See Fed. R.

Civ. P. 4(e)(1). Under New York law, service on a natural person may be accomplished "by

7

delivering the summons within the state to a person of suitable age and discretion at the actual

place of business, dwelling place or usual place of abode of the person to be served and . . . by

mailing the summons by first class mail to the person to be served at his or her actual place of

business[.]"   N.Y. C.P.L.R. § 308(2).

Plaintiff purported to serve defendants Gao and Liu, on two separate occasions, by

leaving copies of the summons and Complaint, first with Nancy Nee, and then with Kim "W,"

at 225-21 Merrick Boulevard in Laurelton (i.e., King Wok), and by thereafter mailing copies

to each defendant at the same address.   See 12/4/17 Affs. of Service; 2/28/18 Affs. of

Service.   As the record is uncontradicted that Liu has owned and worked at the restaurant at

that location since September 2015, see Tr. 14:5-17; Compl. ¶¶ 20, 21, Liu was properly

served at King Wok under section 308(2) of New York's CPLR.[4]

In contrast, plaintiff has not established proper service on defendant Gao.   Plaintiff

testified at the inquest hearing that about one month after he began working at King Wok, Gao

sold the restaurant—in or around September 2015.   See Tr. 14:5-12.   Plaintiff further testified

that after selling the business, Gao "[n]o longer" worked at King Wok.   Id. 14:20-22.

Inexplicably, however, Gao was supposedly served by delivery of the summons and Complaint

to workers at the King Wok location in December 2017 and February 2018—more than two

years after Gao sold the business and ceased working there.   As plaintiff has failed to establish

---

[4] "New York courts have construed actual place of business to include (1) a place where the
defendant regularly transacts business, or (2) an establishment that the defendant owns or
operates, where there is a clear identification of the work performed by her with that place of
business."   Velez v. Vassallo, 203 F.Supp.2d 312, 325 (S.D.N.Y. 2002) (collecting cases)
(quotations omitted).

that Gao was served at what was then his actual place of business, this Court concludes that

service on Gao was ineffective.   See, e.g., Reyes Hernandez v. Delta Deli Mkt. Inc., No. 18-

CV-375 (ARR)(RER), 2019 WL 643735, at *4-5 (E.D.N.Y. Feb. 12, 2019); Remice v. Zenk,

No. 03-CV-286 (CPS)(RML), 2008 WL 4516246, at *4 (E.D.N.Y. Oct. 1, 2008); Murray v.

Watertown Cardiology, P.C., No. 07-CV-748 (TJM)(GJD), 2007 WL 2903947 (N.D.N.Y.

Oct. 1, 2007).   Despite actual notice of this defect, see Tr. 19:22-21:7, plaintiff has not sought

an opportunity to properly serve Gao.   Plaintiff's failure to comply with section 308(2) of the

CPLR thus constitutes grounds for dismissal of the claims against Gao.   See Reyes Hernandez,

2019 WL 643735, at *5; Dezonie v. Asset Prot. & Sec., Inc., No. 08-CV-1261 (HB), 2009

WL 1873527, at *3 (S.D.N.Y. June 30, 2009).

### B.   Service on the Corporate Defendants

Rule 4 of the FRCP permits service of a corporation in a manner authorized by the law

of the forum state.   See Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).   New York law provides for

service of process on a corporation through New York's Secretary of State.   See N.Y. Bus.

Corp. Law § 306(b)(1).

Plaintiff properly served Shirley's Place through the Secretary of State.   See 12/4/17

Corp. Aff. of Service at 2.   As to defendant Jenny & Richard's, that corporation was

dissolved on October 17, 2016.   See N.Y.S. Department of State, Division of Corporations,

Entity Information (last visited February 20, 2019).[5]   Plaintiff served Jenny & Richard's

---

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of
Jenny & Richard's dissolution and the date thereof.   See Reyes Hernandez, 2019 WL 643735,
at *3 n.3; see also https://www.dos.ny.gov/corps/bus_entity_search.html.

through the New York State Secretary of State on December 4, 2017, over a year after the

corporation's dissolution.  See 12/4/17 Corp. Aff. of Service at 1.  Nevertheless, under New

York law, "[i]t is well settled that personal jurisdiction over a dissolved corporation may be

obtained through service upon the Secretary of State[.]"  Bruce Supply Corp. v. New Wave

Mech., Inc., 773 N.Y.S.2d 408, 409 (2d Dep't 2004) (quotations omitted); see Reyes

Hernandez, 2019 WL 643735, at *4 n.8; Ortiz v. Green Bull, Inc., No. 10-CV-3747

(ADS)(ETB), 2011 WL 5553834, at*3 (E.D.N.Y. Nov. 14, 2011).  Accordingly, plaintiff

properly served Jenny & Richard's, as well as Shirley's Place, through the Secretary of State.

## III.   Liability

### A.   The Fair Labor Standards Act—Legal Principles

#### 1.   Employer/Employee Relationship

The FLSA mandates that "no employer shall employ any of his employees . . . for a

workweek longer than forty hours unless such employee receives compensation for his

employment in excess [of 40 hours] at a rate not less than one and one-half times the regular

rate at which he is employed."  29 U.S.C. § 207(a)(1).  In addition, the FLSA sets forth a

minimum hourly wage that an employer must pay its employees.  See id. § 206(a)(1)(C).

The FLSA defines an "employer" to include "any person acting directly or indirectly in the

interest of an employer in relation to an employee . . . ."  Id. § 203(d); see also id. § 203(g)

(defining "employ" as "to suffer or permit to work").  An employee may bring suit against

his employer where the employee was "engaged in commerce or in the production of goods for

commerce," or where the employer is "an enterprise engaged in commerce or in the

production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.   Indeed, the regulations promulgated by the United States Department of Labor under the FLSA recognize that there may be joint liability for FLSA violations.   See 29 C.F.R. § 791.2 ("A single individual may stand [as an employee] to two or more employers at the same time under the Fair Labor Standards Act . . . ."); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).   In order to determine whether an employer-employee relationship exists for FLSA purposes, courts have adopted an "economic realities" test, "grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'"   Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

The Second Circuit has identified four factors that a court should address in applying, on a case-by-case basis, the economic realities test: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."   Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal quotations and citations omitted); see id. at 12 n.1.   Even in the absence of

11

"formal control," an entity or individual may constitute an "employer" if that party had

"functional control" of the employee.   See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D.

516, 526 (S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72), vacated and remanded on other

grounds, 811 F.3d 528 (2d Cir. 2016).   In accordance with these principles, "a corporate

officer with operational control of a corporation's covered enterprise is an employer along with

the corporation . . . ."   Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch,

J.) (quotation and citation omitted); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139

(2d Cir. 1999).   Consequently, joint employers, including corporate officers with the "power

to control," may be held jointly and severally liable for FLSA violations.   See Moon, 248

F.Supp.2d at 236-37 (citations omitted).

### 2.   Violations of the FLSA

Under the FLSA, an employee must "be compensated at a rate of no less than one and

one-half times the regular rate of pay for any hours worked in excess of forty per week."

Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013)

(citing 29 U.S.C. § 207(a)).   In order to establish liability under the FLSA for unpaid

minimum wages or overtime pay, "a plaintiff must prove that he performed work for which he

was not properly compensated, and that the employer had actual or constructive knowledge of

that work."   Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham

Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d

80, 87 (2d Cir. 2003)).   Employers that violate this provision "shall be liable to the employee

or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).   The FLSA contains a two-year statute of limitations for non-willful violations, and, for willful violations, a three-year limitations period from the date that the claim accrued.   See 29 U.S.C. § 255(a).

Moreover, "[u]nder the FLSA, an employer may not shift the cost of purchasing 'tools of the trade' to an employee if 'the cost of such tools cuts into the minimum or overtime wages required to be paid him under the [FLSA].'" Ortega v. JR Primos 2 Rest. Corp., No. 15-CV-9183 (JCF), 2017 WL 2634172, at *3 (S.D.N.Y. June 16, 2017) (quoting 29 C.F.R. § 531.35).   "Vehicles are considered tools of the trade if employees are required to possess and utilize them in the course of their employment."   Canelas v. World Pizza, Inc., No. 14-CV-7748 (ER), 2017 WL 1233998, at *13 (S.D.N.Y. Mar. 31, 2017) (quotations omitted).

## B.    New York Labor Law—Legal Principles

The NYLL is quite similar to the FLSA in that it requires employers to pay a minimum hourly wage to employees,[6] as well as overtime compensation.   See N.Y. Lab. Law § 650 *et seq.*; Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all respects.").   Indeed, like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."   See Vargas v. Jet Peru-Courier Corp., No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) ("[T]he

---

[6] The minimum wage required under the NYLL is, however, higher than the rate mandated under the FLSA.   See *infra* p. 24 n.17.

analysis of the employment relationship under both statutes is based on the same factors."), adopted, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018); Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (citations omitted); Sethi v. Narod, 974 F.Supp.2d 162, 188 (E.D.N.Y. 2013) (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)).

Unlike the FLSA, the NYLL requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage, . . . ; the regular pay day . . . ; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay." See N.Y. Lab. Law § 195(1)(a).   Moreover, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." See N.Y. Lab. Law § 195(3).

NYLL regulations that govern the hospitality industry, including restaurants, additionally provide for "spread of hours" compensation.   "[S]pread of hours is the length of the interval between the beginning and end of an employee's workday."   N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6.   "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."   Id.

14

§ 146-1.6(a).   The "spread of hours" mandate applies to "all employees in restaurants . . . , regardless of a given employee's regular rate of pay."   Id. § 146-1.6(d).

### C.   Application of the Law to the Facts

Having set forth the relevant legal standards under the FLSA and NYLL, the Court next considers whether the factual allegations asserted in plaintiff's Complaint, most of which are deemed to be admitted as a result of defendants' default, are sufficient to warrant a finding of liability against defendants Jenny & Richard's, Liu, and Shirley's Place, see Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137, and whether they should be held jointly and severally liable.

### 1.   Defendants' Liability

Plaintiff has sufficiently alleged that the aforesaid defendants were his employers for purposes of the FLSA[7] and NYLL.   See generally Compl. ¶¶ 7-16.   Plaintiff has established that the corporate defendants owned and operated the restaurant where he worked.   See id. ¶¶ 8, 10, 15, 16.   With respect to Liu, plaintiff's Complaint alleges that he is the "owner,

---

[7] Plaintiff brings his FLSA claims pursuant to a theory of "enterprise" coverage.   See Compl. ¶¶ 9, 11, 19, 22.   In the context of a motion for default judgment, courts have found similar conclusory but uncontested allegations to be sufficient to satisfy the interstate commerce requirement.   See Reyes v. Art Tek Design, Ltd., No. 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-CV-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015).

officer, director and/or managing agent of Shirley's Place Inc." <u>See id.</u> ¶¶ 20, 21.[8]   The

allegations contained in the Complaint thus would appear to be sufficient to find that

defendants were plaintiff's joint "employers" under the FLSA and the NYLL.   <u>See, e.g.</u>,

<u>Vargas</u>, 2018 WL 1545699, at *5-6; <u>Peralta v. M & O Iron Works, Inc.</u>, No. 12-CV-3179

(ARR)(RLM), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

The pleading's simplistic depiction of all four defendants' joint ownership and control

over King Wok (<u>see</u> Compl. ¶¶ 15-16) was, however, flatly refuted by plaintiff's testimony at

the inquest hearing.   According to that testimony, plaintiff began working at King Wok in

August 2015, when the restaurant was owned and operated by Gao.   Sometime in September,

after approximately one month, Gao sold the business to Liu and ceased working at King Wok.

<u>See</u> Tr. 13:15-14:22.   At that point, Liu became plaintiff's "boss."   <u>Id.</u> 14:10-17.   Official

records of New York's Department of State confirm that Gao's corporation, Jenny &

Richard's, was dissolved on October 17, 2016.   <u>See</u> *supra* pp. 9-10 & n.5.[9]

In the face of this evidence, the Court is entitled to reject the pleading's refuted

allegations that all four defendants were plaintiff's joint employers.   On the contrary, the

credible proof establishes that Gao and his company, Jenny & Richard's, were plaintiff's

employers for approximately one month, and that thereafter Liu and his entity, Shirley's Place,

jointly bought and took over the business.   Therefore, Jenny & Richard's should be held liable

---

[8] Although the Complaint contains similar allegations against Gao, <u>see</u> Compl. ¶¶ 17, 18, he
was not properly served, <u>see</u> *supra* pp. 8-9.

[9] Those records reflect that Gao was the Chief Executive Officer of Jenny & Richard's.

only for those violations and resulting damages that accrued in the initial one-month period of

plaintiff's employment at King Wok.[10]   See, e.g., Reyes Hernandez, 2019 WL 643735, at *3,

*4 (concluding that dissolved corporations "cannot be held liable for actions that occurred

subsequent to their legal dissolution[,]" where plaintiff "has not sufficiently alleged how they

could be liable for [such] actions"); Gil v. Frantzis, No. 17-CV-1520 (ARR)(SJB), 2018 WL

4522094, at *7 (E.D.N.Y. Aug. 17, 2018), adopted as modified on other grounds, 2018 WL

4299987 (E.D.N.Y. Sept. 10, 2018).[11]   By the same token, Liu and Shirley's Place should be

held jointly and severally liable only for those violations and damages accruing during the

remaining period of plaintiff's employment.   See, e.g., Reyes Hernandez, 2019 WL 643735,

at *4; Vargas, 2018 WL 1545699, at *5-6; Apolinar v. Global Deli & Grorcery [sic], Inc.,

_____

[10] Had Gao been properly served, he and his company would have been jointly and severally liable for this limited period.

[11] After plaintiff testified at the inquest hearing regarding Gao's sale of the restaurant, the Court questioned counsel as to the basis for asserting joint and several liability as between the original and subsequent owners and operators of the business.   See Tr. 16:22-17:2.   Counsel offered no factual basis for that theory but instead replied that "sometimes for those small restaurants, even if they sold part of their shares, they still remain as a passive shareholder." Id. 17:16-17.
   Nor do the allegations in the Complaint provide a viable basis for finding Jenny & Richard's jointly liable with Liu and Shirley's Place.   Quoting portions of section 219.4 of the NYLL, the Complaint asserts that the corporate defendants "are considered the same employer . . . because 'employees [of] the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors.'" Compl. ¶ 14 (quoting N.Y. Lab. Law § 219.4).   However, even had "the same supervisors" remained at King Wok, but see Tr. 13:15-14:22 (after Gao sold the restaurant, Liu became plaintiff's "boss"), plaintiff's reliance on section 219.4 is misplaced: the Complaint conveniently omits a critical clause of that provision, which applies only where the subsequent employer is "similar in operation *and ownership* to a prior employer[.]"   N.Y. Lab. Law § 219.4 (emphasis added).   Here, any suggestion of similar ownership is entirely speculative.

17

No. 12-CV-3446 (RJD)(VMS), 2013 WL 5408122, at *14 (E.D.N.Y. Sept. 25, 2013)

(declining to "consider any claims for liability on the part of Defendant Das for the period

preceding his ownership of Global"); Ramirez v. H.J.S. Car Wash Inc., No. 11-CV-2664

(VVP), 2013 WL 1437600, at *6 (E.D.N.Y. Apr. 9, 2013) (rejecting theory of successor

liability "in the absence of any proof of continuity of ownership"); Moon, 248 F.Supp.2d at

236-37.

### 2.   Minimum Wage

Plaintiff alleges that defendants failed to pay him the minimum wage rate for each hour

of work that he performed.   See Compl. ¶¶ 38, 70, 76; see also Affirmation of Lu Nan Fan in

Support of Motion for Default Judgment (Aug. 21, 2018) ("Fan Aff.") ¶ 11, DE #23-2.   Both

the FLSA and NYLL require that employees be paid a minimum hourly rate.   See 29 U.S.C.

§ 206(a)(1); N.Y. Lab. Law § 652.   During the relevant time period, the federal minimum

wage rate was $7.25 and the NYLL minimum wage rate was $8.75 in 2015 and $9.00 in 2016.

See infra p. 24 n.17.[12]   By alleging that plaintiff was paid a fixed daily salary of $80 in 2015,

---

[12] "Under federal and state law, employers may compensate tipped employees at a lower
hourly rate by crediting a portion of their tips against the minimum wage."   Schalaudek v.
Chateau 20th St. LLC, No. 16-CV-11 (WHP)(JLC), 2017 WL 729544, at *6 (S.D.N.Y. Feb.
24, 2017) (citing 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3(b)),
modified and adopted in relevant part, 2017 WL 1968677 (S.D.N.Y. May 11, 2017).   To
qualify for a tip credit, the employer must satisfy certain prerequisites, including informing the
employee of the statutory requirements governing tip credits.   See id.; Blackwell v. Actor's
Playhouse, 14-CV-603 (LGS)(FM), 2016 WL 1483834, at *4 n.7 (S.D.N.Y. Apr. 4, 2016),
adopted, 2016 WL 5239623 (S.D.N.Y. Sept. 22, 2016).   Having defaulted, defendants "have
presented no evidence that they satisfied the notice requirements" of the FLSA and NYLL, and
they therefore are ineligible for the tip credit.   Blackwell, 2016 WL 11483834, at *4 n.7; see
Schalaudek, 2017 WL 729544, at *6 & n.5.

and $100 in 2016, for fifteen-hour days without a break, plaintiff sufficiently states claims for failure to pay the minimum wage under the FLSA and NYLL. See Compl. ¶¶ 29-36, 39-40.

### 3.    Overtime

The Complaint alleges that plaintiff regularly worked overtime hours each week, usually working fifteen-hour days, and that defendants did not pay him the requisite premium for the overtime hours.   See Compl. ¶¶ 29-36; see also Fan Aff. ¶¶ 3-8, 11.   Plaintiff has sufficiently alleged claims against defendants for deficiencies in his overtime pay under the FLSA and NYLL.

### 4.    New York Spread-of-Hours Provisions

Plaintiff has also sufficiently alleged a violation of NYLL's spread-of-hours provision—N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.   Plaintiff regularly worked in excess of ten hours throughout the relevant time periods.   See Compl. ¶¶ 29-33; see also Fan Aff. ¶¶ 3-7. Thus, plaintiff has sufficiently alleged a spread-of-hours violation.   See Balczyrak-Lichosyt v. Soniya Hotel, LLC & Harshad Mistry, No. 16-CV-4386 (SIL), 2018 WL 4861393, at *7 (E.D.N.Y. Sept. 28, 2018).

### 5.    Wage Theft Prevention Act

The Complaint sufficiently alleges that defendants failed to provide the wage notices required by section 195(1)(a) of the NYLL.   See Compl. ¶ 30*; Fan Aff. ¶ 10.   Additionally, the Complaint sufficiently alleges that defendants failed to provide plaintiff with a statement with every payment of wages, in violation of section 195(3) of the NYLL.   See Compl. ¶ 35*; Fan Aff. ¶ 10.   Therefore, plaintiff has properly stated claims for violations of the WTPA.

19

See Vazquez v. 142 Knickerbocker Enter., Corp., No. 13-CV-06085 (LDH)(PK), 2018 WL

1401798, at *2 (E.D.N.Y. Mar. 20, 2018).

### 6.    Tools of the Trade

Plaintiff alleges that he incurred unreimbursed costs associated with tools of

the trade—gas and maintenance of a vehicle used for food delivery.   See Compl. ¶ 39*; Fan

Aff. ¶ 13.[13]   The Complaint thereby states a claim for violating 29 C.F.R. § 531.35, a

regulation promulgated under the FLSA.[14]   See Gonzalez v. Masters Health Food Serv. Inc.,

No. 14-CV-07603 (VEC), 2017 WL 3835960, at *20 (S.D.N.Y. July 27, 2017).

### 7.    General Business Law § 349

Section 349 of New York's General Business Law ("GBL") prohibits, amongst other

things, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in

the furnishing of any service[.]"   N.Y. Gen. Bus. Law § 349; see also Bueno v. LR Credit

18, LLC, 269 F.Supp.3d 16, 19 (E.D.N.Y. 2017).   Section 349 "allows courts to 'increase

the award of damages to an amount not to exceed three times the actual damages up to one

---

[13] The Complaint alleges a violation "in relation to tools of the trade, that is $900 on *bicycles* during the relevant period." Compl. ¶ 39* (emphasis added). In both his Affirmation in Support and hearing testimony, plaintiff states under oath that "I used my own *car* to perform delivery duties[.]" Fan Aff. ¶ 13 (emphasis added); see Tr. 7:11-8:9. The Court concludes that the allegation in the Complaint is yet another error on the part of plaintiff's counsel. See *supra* p. 5 n.3. Since the Complaint seeks $900 for the tools-of-the-trade violation—the same amount sought in his motion for default judgment, see Pl. Mem. at 18—this minor discrepancy does not violate Rule 54(c) of the FRCP, which specifies that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings[,]" Fed. R. Civ. P. 54(c).

[14] The Complaint does not allege a corresponding violation of state law.

thousand dollars, if the court finds the defendant willfully or knowingly violated this section.'" Bueno, 269 F.Supp.3d at 19 (quoting section 349(h)).

While the Complaint alleges a violation of section 349, see Compl. ¶ 43*, plaintiff's motion papers are conspicuously silent regarding this claim, see generally Pl. Mem.; see also Fan Aff.  Therefore, the Court concludes that plaintiff "has abandoned this claim."  See, e.g., Lopez v. Royal Thai Plus, LLC, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *8 (E.D.N.Y. Feb. 6, 2018), adopted, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

## IV.  Damages

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiff's Complaint as to defendants' liability, it need not give the same deference to plaintiff's allegations regarding damages.  See supra p. 7.  Instead, the Court must undertake an inquiry to determine the extent of damages to a "reasonable certainty," see Credit Lyonnais Secs., 183 F.3d at 155, by evaluating and analyzing affidavits and other documentary evidence submitted by plaintiff, see Fustok, 873 F.2d at 40, as well as plaintiff's sworn testimony.

Under both the FLSA and NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him."  Rodriguez v. Queens Convenience Deli Corp., No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). Where, as here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'"  Rodriguez, 2011 WL 4962397, at *2 (quoting

Rivera v. Ndola Pharm. Corp., 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007)); see Vilchis, 2016 WL 6106478, at *5.  Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate.  See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012).

The Court has considered Fan's hearing testimony, along with various delivery receipts admitted into evidence, which reflect deliveries as late as midnight and even 2:00 a.m.  See Tr. 15:8-16:13.  In light of defendants' default and failure to respond to any of plaintiff's submission, plaintiff's evidence on damages stands uncontroverted.  See Piedra v. Ecua Rest., Inc., No. 17-CV-3316 (PKC)(CLP), 2018 WL 1136039, at *11 (E.D.N.Y. Jan. 31, 2018), adopted and modified on other grounds, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018).  "The Court concludes that plaintiff's declarations and submissions as to the hours worked, rate of pay received, and other damages are sufficient bases upon which to calculate and recommend an award of damages."  Id.

## A.  Wage-and-Hour Claims

Before determining the damages to recommend for the wage-and-hour claims asserted, the Court must address threshold issues concerning the number of hours plaintiff worked per week, plaintiff's hourly rates of pay and the number of weeks he worked.

### 1.  Hours Worked Per Week

Plaintiff alleges in the Complaint, and confirms in his declaration and testimony, that he regularly worked overtime hours and was paid a flat rate in cash.  For example, from August 25 through October 3, 2015, plaintiff worked five days per week, fifteen hours per day, for a

total of 75 hours per work week.   He was paid a fixed daily salary of $80 in cash.   See

Compl. ¶¶ 29, 34; see also Fan Aff. ¶¶ 3, 8.   From October 4 through December 15, 2015,

plaintiff worked five days per week, averaging 69 hours per work week, and received a fixed

daily salary of $80 in cash.   See Compl. ¶¶ 30, 35; see also Fan Aff. ¶¶ 4, 8.   From

February 10 through March 31, 2016, plaintiff worked approximately 60 hours per work

week, four days per week, and received a fixed daily salary of $100 in cash.   See Compl.

¶¶ 31, 36; see also Fan Aff. ¶¶ 5, 8.   From April 1 through May 31, 2016, plaintiff worked

seven days per week, averaging 105 hours per week, and received a fixed daily salary of $100

in cash.   See Compl. ¶¶ 32, 36; see also Fan Aff. ¶¶ 6, 8.   Finally, plaintiff worked from

June 1 through June 22, 2016, six days per week, an average of 90 hours per work week, and

received a fixed daily salary of $100 in cash.   See Compl. ¶¶ 33, 36; see also Fan Aff. ¶¶ 7,

8.

### 2.    Regular Hourly Rate of Pay and Overtime Rate

For purposes of the FLSA, when an employee is "paid a flat sum for a day's work[,]"

that employee's regular hourly rate is calculated by "totaling all the sums received at such day

rates or job rates in the workweek and dividing by the total hours actually worked."   29

C.F.R. § 778.112; see Calle v. Yoneles Enters., Inc., 16-CV-1008 (NGG), 2017 WL

6942652, at *12 (E.D.N.Y. Oct. 24, 2017), adopted, 2018 WL 401269 (E.D.N.Y. Jan. 11,

2018).   In the instant case, plaintiff alleges that he received a fixed daily salary of between

$80 and $100 for hours that he routinely worked each week.   Plaintiff's damages calculations

estimate his paid hourly rate at various ranges between $5.33 and $7.78 for the relevant time

periods[15]—all of which are figures he derived by dividing the amounts paid in cash by the total

hours worked in a week.   See Damages Calculations for Lu Nan Fan (attached as Ex. 7 to

Hang Aff.) ("Damages Calculations"), DE #23-7.[16]

Thus, plaintiff's rate of pay for the duration of his employment is calculated as follows:

| Weeks | Weekly Salary | Hours Worked per Week | Hourly Rate of Pay |
|---|---|---|---|
| 8/25/2015 – 10/3/2015 | $ 400.00 | 75 | $ 5.33 |
| 10/4/2015 – 12/15/2015 | $ 400.00 | 69 | $ 5.80 |
| 2/10/2016 – 3/31/2016 | $ 400.00 | 60 | $ 6.67 |
| 4/1/2016 – 5/31/2016 | $ 700.00 | 105 | $ 6.67 |
| 6/1/2016 – 6/22/2016 | $ 600.00 | 90 | $ 6.67 |

This is sufficient to establish a minimum wage violation under both the FLSA and the

NYLL.[17]

In calculating unpaid overtime wages based on one-and-one-half times the regular rate,

the Court uses the applicable NYLL minimum wage rate to determine the overtime premium

---

[15] The $7.78 hourly rate referenced in plaintiff's counsel's calculations mistakenly assumes weekly wages of $700 in June 2016, when the evidence establishes that plaintiff worked six days per week, at $100 per day (or $600 per week) during that period.   Compare Damages Calculations p. 5 with Fan Aff. ¶ 7.

[16] An NYLL regulation provides that a restaurant employee's regular hourly rate is determined by dividing the employee's weekly earnings by the lesser of 40 hours or the hours actually worked.   See N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5.   Plaintiff has neither cited that provision nor calculated his regular hourly rate based on a 40-hour week.   Therefore, this Court, like plaintiff, calculates the hourly rate based on the number of hours actually worked, which would appear to be what plaintiff and his employers contemplated.   See generally Calle, 2017 WL 6942652, at *12-13 (collecting cases).

[17] The New York State minimum wage rate was $8.75 during 2015 and $9.00 during 2016; the federal minimum wage rate was $7.25.   See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1). This Court applies the higher of the two rates.   See 29 C.F.R. § 778.5; Fermin, 93 F.Supp.3d at 49.

owed to plaintiff.   See Calle, 2017 WL 6942652, at *14 & n.17 (a plaintiff may recover under

the statute that provides the highest measure of damages).   The results of the Court's

calculations are as follows:

| Weeks | Min. Wage (for 40 hours) | OT Earned | Paid | Owed | Damages |
|---|---|---|---|---|---|
| 8/25/2015 – 9/26/2015 (5 weeks at 75 hours) | $ 350.00 ($8.75/hr.) | $ 459.55 | $ 400.00 | $ 409.55 | $  2,047.75 |
| **Total for Jenny & Richard's:** | | | | | **$  2,047.75** |
| | | | | | |
| 9/27/2015 – 10/3/2015 (1 week at 75 hours) | $ 350.00 ($8.75/hr.) | $ 459.55 | $ 400.00 | $ 409.55 | $     409.55 |
| 10/4/2015 – 12/15/2015 (10 weeks at 69 hours) | $ 350.00 ($8.75/hr.) | $ 380.77 | $ 400.00 | $330.77 | $  3,307.70 |
| 2/10/2016 – 3/31/2016 (7 weeks at 60 hours) | $ 360.00 ($9.00/hr.) | $ 270.00 | $ 400.00 | $ 230.00 | $  1,610.00 |
| 4/1/2016 – 5/31/2016 (9 weeks at 105 hours) | $ 360.00 ($9.00/hr.) | $877.50 | $ 700.00 | $537.50 | $  4,837.50 |
| 6/1/2016 – 6/22/2016 (3 weeks at 90 hours) | $ 360.00 ($9.00/hr.) | $675.00 | $ 600.00 | $435.00 | $  1,305.00 |
| **Total for Liu and Shirley's Place:** | | | | | **$   11,469.75** |

Therefore, to compensate plaintiff for defendants' minimum wage and overtime violations, this

Court recommends an award of $2,047.75 from Jenny & Richard's and an award of

$11,469.75 from Liu and Shirley's Place, jointly and severally.

**B.    Spread-of-Hours Compensation**

By regulation, New York restaurant workers are entitled to compensation of one hour's

pay at the basic minimum wage rate for each day worked in excess of ten hours.   See Calle,

2017 WL 6942652, at *9 (citing N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(a)).

Plaintiff alleges that he regularly worked in excess of ten hours during the various periods that he worked for defendants.   See Compl. ¶¶ 29-33; see also Fan Aff. ¶¶ 3-7.

Plaintiff is therefore entitled to the following spread-of-hours pay:

| Period | NYLL Min. Wage | No. of Days Worked Over 10 Hours | No. of Weeks in Period | Total SOH Owed for Period |
|---|---|---|---|---|
| 8/25/2015 – 9/26/2015 | $  8.75 | 5 | 5 | $   218.75 |
| Total for Jenny & Richard's: | | | | $  218.75 |
| | | | | |
| 9/27/2015 – 10/3/2015 | $  8.75 | 5 | 1 | $    43.75 |
| 10/4/2015 – 12/15/2015 | $  8.75 | 4 | 10 | $   350.00 |
| 2/10/2016 – 3/31/2016 | $  9.00 | 4 | 7 | $   252.00 |
| 4/1/2016 – 5/31/2016 | $  9.00 | 7 | 9 | $   567.00 |
| 6/1/2016 – 6/22/2016 | $  9.00 | 6 | 3 | $   162.00 |
| Total for Liu and Shirley's Place: | | | | $ 1,374.75 |

Accordingly, the Court recommends that plaintiff be awarded $218.75 from Jenny & Richard's and $1,374.75 from Liu and Shirley's Place, jointly and severally, in unpaid spread-of-hour wages.

### C.    Liquidated Damages

Plaintiff requests liquidated damages under the FLSA or NYLL.   See Pl. Mem. at 14-15.   Under the FLSA, an employer who violates the overtime compensation requirements is liable for "an additional equal amount as liquidated damages," unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.   See 29 U.S.C. §§ 216(b), 260.   As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief. See Peralta, 2014 WL 988835, at *10.   Therefore, plaintiff is entitled to an award of

26

liquidated damages under the FLSA.

The current version of the NYLL similarly authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."   N.Y. Lab. Law § 663(1). Liquidated damages under the NYLL are likewise calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.   See id.

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."   Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

As discussed above, since the NYLL provides for a higher overtime rate, the Court recommends awarding liquidated damages under the NYLL.   See id. (court may award the greater of the two liquidated damages awards).   Applying 100 percent liquidated damages as required, the Court recommends awarding plaintiff $2,047.75 from Jenny & Richard's and $11,469.75 from Liu and Shirley's Place, jointly and severally, in liquidated damages for unpaid minimum and overtime wages under the NYLL.   Plaintiff is also entitled to NYLL liquidated damages on $218.75 from Jenny & Richard's and $1,374.75 from Liu and Shirley's Place, jointly and severally, in spread-of-hours compensation.   See Calle, 2017 WL 6942652, at *15; Fermin, 93 F.Supp.3d at 48.

### D.    Tools of the Trade

"[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him[.]"  29 C.F.R. § 531.35.   "In this Circuit, [v]ehicles . . . are considered tools of the trade if employees are required to possess and utilize them in the course of their employment." Ming Hui v. Shorty's Seafood Corp., No. 15-CV-7295 (RJD)(ST), 2017 WL 5054401, at *9 (E.D.N.Y. Sept. 6, 2017) (quotations omitted), adopted, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017).

Plaintiff alleges that he is owed money for tools of the trade.   Specifically, he alleges that he incurred expenses in using his car to perform delivery duties.   For this, plaintiff is seeking $900 as expenses for gas and maintenance.   See Compl. ¶ 39*; see also Fan Aff. ¶ 13; Damages Calculations p. 5.   Plaintiff worked at King Wok a total of thirty-five weeks: five while the restaurant was owned by Jenny & Richard's and thirty while it was owned by Liu and Shirley's Place.   Therefore, one-seventh of the $900 sought by plaintiff for tools of the trade (or $128.58) should be charged to Jenny & Richard's, with the remainder (or $771.42) charged to Liu and Shirley's Place, jointly and severally.

### E.    Statutory Damages Under the WTPA

Under the WTPA, plaintiff is entitled to "$50 per workday after February 27, 2015, up to $5,000 for failure to provide a wage notice."   Frantzis, 2018 WL 4522094, at *10.

Moreover, plaintiff is also entitled to "$250 per workday for each workday after February 27, 2015, up to $5,000 for failure to provide a wage statement." Id.

Here, plaintiff worked for Jenny & Richard's beginning August 25, 2015 until around September 26, 2015, and for Liu and Shirley's Place from around September 27, 2015 until June 22, 2016, and never received a proper wage notice or statement. See Compl. ¶¶ 29-33, 30*, 31*, 35*, 36*; see also Fan Aff. ¶¶ 3-7, 10. Plaintiff worked for defendant Jenny & Richard's for 24 workdays, and thus is entitled to recover $1,200 (24 x $50) for wage notice violations under section 195(1). Plaintiff worked for Liu and Shirley's Place for 166 workdays, and thus would be entitled to recover $8,300 (166 x $50) from those defendants, but for the $5,000 statutory maximum. Plaintiff is also entitled to recover the maximum penalty of $5,000 from each of Jenny & Richard's[18] and from Liu and Shirley's Place,[19] jointly and severally, for failure to provide wage statements. See Lopez v. SQ Brooklyn, Inc., No. 17-CV-4191 (RJD)(LB), 2018 WL 6381495, at *5 (E.D.N.Y. Dec. 3, 2018).

Therefore, the Court recommends that the District Court award plaintiff a total of $6,200 from Jenny & Richard's and $10,000 from Liu and Shirley's Place, jointly and severally, for defendants' violations of the WTPA's wage notice and statement requirements.

---

[18] (24 days x $250 = $6,000)

[19] (166 days x $250 = $41,500)

## F.    Interest

### 1.    Prejudgment Interest

Plaintiff requests prejudgment interest pursuant to New York law.   See Pl. Mem. at 10, 17.   "Although it is well settled that prejudgment interest is not awardable under FLSA where liquidated damages are awarded, NYLL permits the award of both liquidated damages and prejudgment interest."   Royal Thai Plus, 2018 WL 1770660, at *12 (citations and quotations omitted).   Prejudgment interest is available for unpaid overtime and spread-of-hour wages under the NYLL, but not for amounts awarded under the WTPA, see Martinez v. Alimentos Saludables Corp., 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *24 (E.D.N.Y. Sept. 22, 2017), or as liquidated damages, see Fermin, 93 F.Supp.3d at 49.[20]

"There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both the FLSA and NYLL."   Thomas v. Good Vision Taste Inc., No. 17-CV-6084 (FB)(LB), 2018 WL 4268909, at *7 (E.D.N.Y. Apr. 17, 2018) (quotations omitted), adopted and modified on other grounds, 2018 WL 4265868 (E.D.N.Y. Sept. 5, 2018).   Courts that have awarded prejudgment interest in such cases have reasoned that plaintiffs "should be permitted to recover under the statute that provides the greatest relief,

---

[20] Although plaintiff's damages calculations provide for prejudgment interest only on his unpaid minimum wage, overtime, and spread-of-hours damages, see Damages Calculations pp. 1, 5, his memorandum of law erroneously states that prejudgment interest "is appropriate on all of Plaintiff's claims[,]" Pl. Mem. at 17.   Contrary to this assertion, prejudgment interest is not available on liquidated damages, statutory damages under the WTPA, or on plaintiff's tools-of-the-trade claim, which was asserted only under federal law.   See Compl. ¶¶ 37*-40*.

which in this case is the NYLL." Santana v. Latino Express Rests., Inc., 198 F.Supp.3d 285, 294 (S.D.N.Y. 2016) (citations and quotations omitted). This Court agrees.

"Under New York law, prejudgment interest is calculated at a rate of 9% per annum." Jiaren Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, at *17 (E.D.N.Y. Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001). Where "damages were incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." Id. (quotations omitted). "The midpoint of the relevant period of plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest." Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No. 14-CV-5665 (CBA)(RML), 2015 WL 13731362, at *7 (E.D.N.Y. Aug. 26, 2015).

The unpaid wages and spread of hours due to plaintiff under the NYLL is $2,266.50 from Jenny & Richard's ($2,047.75 + $218.75) and $12,844.50 from Liu and Shirley's Place ($11,469.75 + $1,374.75). The relevant periods of employment for those wages are August 25, 2015 through September 26, 2015 (for Jenny & Richard's), and September 27, 2015 through June 22, 2016 (with a break from December 16, 2015 until February 9, 2016) (for Liu and Shirley's Place). The mid-point between August 25, 2015 and September 26, 2015 is September 10, 2015, and the midpoint between September 27, 2015 and June 22, 2016 is February 8, 2016. The Court recommends that prejudgment interest be awarded in a daily amount of $0.56 from September 10, 2015 until the day final judgment is entered against Jenny

31

& Richard's.[21]   The Court also recommends that prejudgment interest be awarded in a daily

amount of $3.17 from February 8, 2016 until the day final judgment is entered against Liu and

Shirley's Place.[22]

### 2.    Post-Judgment Interest

Plaintiff also requests post-judgment interest.   See Pl. Mem. at 21; see also Compl. *ad*

*damnum* clause ¶ i.   Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money

judgment in a civil case recovered in a district court."   Therefore, the Court recommends that

plaintiff be awarded post-judgment interest, "to be calculated from the date the Clerk of the

Court enters judgment in this action until the date of the payment, at the rate set forth in 28

U.S.C. § 1961."   Sajvin v. Singh Farm Corp., No. 17-CV-04032 (AMD)(RER), 2018 WL

4214335, at *8 (E.D.N.Y. Aug. 13, 2018), adopted, 2018 WL 4211300 (E.D.N.Y. Sept. 4,

2018).

### F.    Attorney's Fees

### 1.    Applicable Legal Standard

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of

"reasonable" attorney's fees.   See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).   Plaintiff

bears the burden of proving the reasonableness of the fees sought.   See Savoie v. Merchs.

Bank, 166 F.3d 456, 463 (2d Cir. 1999).   In considering an application for attorney's fees,

---

[21] ($2,266.50 at 9% = $203.99)
   ($203.99 / 365 days per year = $0.56)

[22] ($12,844.50 at 9% = $1,156.01)
   ($1,156.01 / 365 days per year = $3.17)

the Court must first determine the presumptively reasonable fee.  See Arbor Hill Concerned

Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).  This

presumptively reasonable fee—or lodestar[23]—is essentially "what a reasonable, paying client

would be willing to pay, given that such a party wishes to spend the minimum necessary to

litigate the case effectively."  Simmons v. New York City Transit Auth., 575 F.3d 170, 174

(2d Cir. 2009) (citing Arbor Hill, 522 F.3d at 190) (quotations omitted).

     Courts can and should exercise broad discretion in determining a reasonable fee award.

See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in

making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's

"considerable discretion").   The method for determining reasonable attorney's fees in this

Circuit is based on a number of factors, such as the labor and skill required, the difficulty of

the issues, the attorney's customary hourly rate, the experience, reputation and ability of the

attorney, and awards in similar cases.  See Arbor Hill, 522 F.3d at 186 n.3, 190.   In

particular, when assessing an attorney's requested hourly rate, courts typically consider other

rates awarded in the district in which the reviewing court sits.   This is known as the "forum

rule."  See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also

Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in

most cases hire counsel from within his district, or at least counsel whose rates are consistent

---

[23] The lodestar is the product of the number of hours reasonably expended on the litigation and
a reasonable hourly rate.  See Arbor Hill, 522 F.3d at 183 ("The fee—historically known as
the 'lodestar'—to which [ ] attorneys are presumptively entitled is the product of hours worked
and an hourly rate.").

with those charged locally.").

    Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190.   With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).   The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "'exclude excessive, redundant or otherwise unnecessary hours.'" Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 2009)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010); see Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).   "[A] fee award should be based on scrutiny of the unique circumstances of each case . . . ." McDaniel v. Cty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citations and quotations omitted).

    In this case, plaintiff seeks $8,450 in attorney's fees for the time expended by attorneys Jian Hang, Lian Zhu, Ge Qu, and Xiaoxi Liu from the firm Hang & Associates, PLLC (the "Hang Firm"). See Pl. Mem. at 21; see also Jian Hang's Affirmation in Support of Motion for Default Judgment (Aug. 21, 2018) ("Hang Aff."), DE #23; Invoice from Hang & Associates, PLLC (attached as Ex. 8 to Hang Aff.) ("Invoice") at 1, DE #23-8.

34

## 2.     Reasonable Hourly Rate

"Reasonable hourly rates for wage and hour cases in this District have generally been set at approximately $300.00 to $400.00 for partners and $100.00 to $300.00 for associates." Xi Qun Xu v. JNP Bus Serv. Inc., No. 16-CV-245 (AMD)(ST), 2018 WL 1525799, at *10 (E.D.N.Y. Feb. 26, 2018) (collecting cases), adopted in part, rejected in part on other grounds, 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018).   Consistent with recent fee awards for Hang's services in similar cases, this Court respectfully recommends an hourly rate of $350 for Hang, who is the Hang Firm's principal.   See id.; see also Hang. Aff. ¶ 24.

Plaintiff provided no information about the three associates—Zhu, Qu, and Liu—or their experience level.[24]   Plaintiff nevertheless requests a rate of $300 for each associate.   As "no information has been provided to support the hourly rate of the associates on this matter, [this Court] respectfully recommend[s] that the hourly rates for each associate be reduced to the lowest associate rate in the range, $100.00 per hour."   Xi Qun Xu, 2018 WL 1525662, at *10 (reducing the rate for the Hang Firm's associates).   This Court, therefore, respectfully recommends an hourly rate of $100 for each associate in this action.

## 3.     Reasonable Number of Hours

Counsel claims that he and his associates spent 25.5 hours on this matter, see Pl. Mem. at 21, and has submitted contemporaneous time records to substantiate the time charges, see Invoice.   The overall time spent is not unreasonable, particularly at the reduced rates of $350

---

[24] The Firm's website does not provide the requisite information.   See http://hanglaw.com/professionals/.

and $100 per hour.

Accordingly, this Court recommends awarding attorney's fees as follows:

| Attorney | Number of Hours | Recommended Hourly Rate | Recommended Fees |
|---|---|---|---|
| J. Hang | 8.0 hours | $ 350 | $ 2,800.00 |
| L. Zhu | 5.3 hours | $ 100 | $   530.00 |
| G. Qu | 5.2 hours | $ 100 | $   520.00 |
| X. Liu | 7.0 hours | $ 100 | $   700.00 |
| **Total:** | **25.5 hours** | | **$ 4,550.00** |

Applying the reduced hourly rates to the number of hours reflected in counsel's billing records, the Court recommends awarding attorney's fees in the amount of $4,550.

### 4.    Allocation of Fees Among Defendants

Plaintiff seeks to hold defendants jointly and severally liable for the entire award of attorney's fees.   See Proposed Default Judg[me]nt Order (Aug. 22, 2018) at 2, DE #24-1. As discussed above, see supra pp. 16-18, Jenny & Richard's is not jointly and severally liable with defendants Liu and Shirley's Place; therefore, it does not follow that liability for fees should be joint and several among all three defendants.

"The allocation of fee liability amongst defendants is a matter committed to the district court's discretion."   Trustees of the Local 813 Pension Trust Fund v. Canal Carting, Inc., No. 12-CV-0060 (CBA)(RLM), 2014 WL 843244, at *18 (E.D.N.Y. Mar. 4, 2014) (citing Koster v. Perales, 903 F.2d 131, 139 (2d Cir. 1990)).   "A court may allocate an award of attorneys' fees between the responsible parties 'where the claims against the defendants are separate and distinct or where culpability is significantly unequal,' such as where defendants are not jointly and severally liable to a plaintiff."   Li Rong Gao v. Perfect Team Corp., 10-

36

CV-1637 (ENV)(CLP), 2017 WL 9481011, at *8 (E.D.N.Y. Jan. 11, 2017) (quoting Koster, 903 F.2d at 139), adopted, 2017 WL 1857234 (E.D.N.Y. May 8, 2017), aff'd, 739 F.App'x 658 (2d Cir. 2018).   Among the factors that a court may consider in determining the allocation of fees are "'the relative culpability of the parties and the proportion of time spent litigating against each defendant.'"   Canal Carting, 2014 WL 843244, at *18 (quoting Koster, 903 F.2d at 139); Li Rong Gao, 2017 WL 9481011, at *8.

In this case, plaintiff's counsel's timesheets do not distinguish between work related to Jenny & Richard's and work related to Liu and Shirley's Place.   See generally Invoice. Nevertheless, in light of plaintiff's extremely brief period of employment before King Wok was acquired by Liu and Shirley's Place—to wit, one month—the most fair and sensible solution would be to apportion fees based on each defendant's respective percentage of responsibility for plaintiff's damages, consistent with the approach in Li Rong Gao, 2017 WL 9481011, at *7.   Since Liu and Shirley's Place are responsible for 77 percent of the total damages award ($36,460 of $47,322), they should be held liable for 77 percent of the fee award (or $3,503.50), with Jenny & Richard's responsible for the remaining 23 percent (or $1,046.50).

### F.   Costs

Plaintiff further requests an award of $510 for costs incurred in filing fees and effecting service of process.   See Hang Aff. ¶¶ 32; see also Plaintiff's Expenses (attached as Ex. 9 to Hang Decl.) ("Process Server Bill"), DE #23-9.   As a general matter, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendant, see 29

U.S.C. § 216(b); N.Y. Lab. Law § 663(1), as long as those costs are tied to "[i]dentifiable, out-of-pocket disbursements," see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., No. 13-CV-3061 (JGK), 2014 WL 2624759, at *8 (S.D.N.Y. June 10, 2014) (quoting Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987)).

The $400 court filing fee is recoverable.  That cost should be allocated in the same manner as the attorney's fees: 77 percent (or $308) attributed to Liu and Shirley's Place and 23 percent (or $92) attributed to Jenny & Richard's.  See Li Rong Gao, 2017 WL 9481011, at *21.  The remaining $110 consists of process server fees.  See Process Server Bill.  Of that amount, half (or $55) involves costs attributable to the defective service on Gao, see id., which should not be allocated to any of the other three defendants, including Jenny & Richard's, see, e.g., Reyes Hernandez, 2019 WL 643735, at *10 (where the court concluded that claims against all but one defendant should be dismissed, the remaining defendant was "only responsible for the costs of its own service [of process], and not the service on the other defendants.").  The remaining $55 is attributable to service of process on Liu.  He and Shirley's Place, who are jointly and severally liable on plaintiff's claims against them, should be jointly liable for the costs of serving Liu.

## CONCLUSION

For the reasons explained above, the Court recommends that the District Court (1) *sua sponte* dismiss the claims against defendant Gao, on account of ineffective service of process; (2) grant a default judgment against defendant Jenny & Richard's in the amount of $11,971.50, consisting of $2,047.75 in unpaid minimum and overtime wages, $218.75 in spread-of-hours

38

compensation, $2,266.50 in liquidated damages, $128.58 for tools of the trade, $6,200 in

WTPA damages, $1,046.50 in attorney's fees, and $92 in costs; and (3) grant default judgment

against defendants Liu and Shirley's Place, jointly and severally, in the amount of $40,355.50,

representing $11,469.75 in unpaid minimum and overtime wages, $1,374.75 in spread-of-

hours compensation, $12,844.50 in liquidated damages, $771.42 for tools of the trade,

$10,000 in WTPA damages, $3,503.50 in attorney's fees, and $363 in costs.   The Court also

recommends awarding, as against Jenny & Richard's, prejudgment interest on $2,266.50, in an

amount to be calculated by the Clerk of Court, by multiplying $0.56 by the number of days

from September 10, 2015 until the day final judgment is entered; and prejudgment interest as

against Liu and Shirley's Place, jointly and severally, on $12,844.50, calculated at the daily

rate of $3.17 from February 8, 2016 until the day final judgment is entered, and that the Court

award post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

   Any objections to the recommendations contained herein must be filed with Judge

Kuntz on or before **March 11, 2019**.   Failure to file objections in a timely manner may waive

a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per

curiam*).

   The Clerk of the Court is respectfully requested to docket this opinion into the ECF

court file and to send copies, via Federal Express, to each defendant at the following

addresses:

39

Jenny & Richard's Inc.
c/o Zuo Yao Gao
5031 184th Street
Fresh Meadows, NY 11365[25]

Shirley's Place, Inc.
225-21 Merrick Boulevard
Laurelton, NY 11413

Zuo Yao Gao
5031 184th Street
Fresh Meadows, NY 11365

"John" Liu
225-21 Merrick Boulevard
Laurelton, NY 11413

**SO ORDERED.**

Dated:     **Brooklyn, New York**
           **February 22, 2019**

                              /s/ *Roanne L. Mann*
                              _____
                              **ROANNE L. MANN**
                              **CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[25] The Court located Gao's address through a Lexis/Nexis public records search for "Zuo Yao Gao." <u>See</u> advance.lexis.com/publicrecordshome (last visited February 20, 2019).